**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF MARYLAND**
*Southern Division*

| | | |
|---|---|---|
| **JEFFERY BATTLE,** | * | |
| **Plaintiff,** | * | |
| **v.** | * | **Case No.: PWG-14-2250** |
| **SYLVIA MATTHEWS BURWELL,** | * | |
| **DEPARTMENT OF HEALTH &** | | |
| **HUMAN SERVICES, NATIONAL** | * | |
| **INSTITUTES OF HEALTH,** | | |
| | * | |
| **Defendant.** | | |
| | * | |

\*    \*    \*    \*    \*    \*    \*    \*    \*    \*    \*    \*    \*

**MEMORANDUM OPINION AND ORDER**

Following years of perceived discrimination by his employer and retaliation for his complaints about that discrimination, culminating in the termination of his employment, Jeffery Battle, an African American male, filed suit in this Court against his employer, the U.S. Department of Health and Human Service's National Institutes of Health (the "Agency"). ECF No. 1. He filed his prolix original Complaint without counsel, identifying a litany of instances of mistreatment and claiming gender and race discrimination, retaliation, hostile work environment, and "[d]iscrimination based on disability." *Id.* Battle then retained counsel and amended his complaint, ECF No. 17, which the Agency believed was subject to dismissal or summary judgment in its favor, ECF No. 24. I permitted Battle to amend again to address the deficiencies the Agency identified, ECF No. 26, and he filed his Second Amended Complaint, ECF No. 32.

Now pending is the Agency's Motion to Dismiss or, in the Alternative, for Summary Judgment, ECF No. 42, in which the Agency contends that the claims in Battle's Second Amended Complaint, like his previous claims, are either unexhausted or comprised of only "bald

assertions," or alternatively, that the Agency is entitled to summary judgment based on the evidence in the administrative record.[1]   I must dismiss those claims for which Battle failed to exhaust his administrative remedies.   Additionally, Battle fails to state a claim for race or gender discrimination based on the remaining allegations.   Nor does he state a claim for hostile work environment or "[d]iscrimination based on disability."   But, because Battle has shown that it is premature to consider the Agency's summary judgment motion as to his retaliation claims, this case will proceed to discovery with regard to them.

## **Background**

Battle worked for the Agency from August 2009 until it terminated his employment in July 2014.[2]   Second Am. Compl. ¶ 6.   He was a Lead Team Specialist and also served as an Acting Supervisor of Contracting.   *Id.* He received "only . . . positive evaluations up until 2010," when former Acting Supervisory Contract Specialist Pat Rice "became his acting supervisor." *Id.* ¶¶ 8–9.

According to Plaintiff, Rice "required that Mr. Battle participate in procurement activities that ran counter to mandatory federal procurement regulations, policies and laws" and Plaintiff "began getting negative performance evaluations," such as his "final 2010 performance evaluation," in which "Mr. Rice gave him a minimally successful rating."   *Id.* ¶ 9.   Plaintiff alleges that in May 2011, he "attempted to gain a promotion to the position of Supervisor[y] Contract Specialist GS-1102-14[,] the Facilities Support Services Contracting Brach's (FSSCB)

---

[1] The parties fully briefed the Agency's Motion.   ECF Nos. 42-2, 47, 49.   A hearing is not necessary.   *See* Loc. R. 105.6.

[2] "At this stage, all well-pleaded allegations in a complaint must be considered as true and all factual allegations must be construed in the light most favorable to the plaintiff."   *Nam v. 2012 Inc.*, No. DKC-15-1931, 2016 WL 107198, at *3 (D. Md. Jan. 11, 2016) (citing *Albright v. Oliver*, 510 U.S. 266, 268 (1994); *Harrison v. Westinghouse Savannah River Co.*, 176 F.3d 776, 783 (4th Cir. 1999)).

Branch Chief," which appears to be the position he was filling as "Acting Supervisor of Contracting GS-1102-14," but Rice hired a white female who "was not qualified" instead. *Id.* ¶ 11. Yet, he concedes in his Opposition that he did not apply for the position, insisting that his failure to apply was "due to Defendant's shenanigans." Pl.'s Opp'n 14 n.8.[3]

Then, "[i]n August 2011, Mr. Daniel Wheeland retaliated against the Plaintiff when he did not hire Mr. Battle as Supervisor of Contracting GS-1102-15 even though his qualifications were superior to the selected applicant Ms. Sharon Bruce." *Id.* ¶ 13. Again in Fall 2011, Battle was "required [to] participate in procurement activities that ran counter to mandatory federal procurement regulations, policies and laws." *Id.* ¶ 14. When he refused, his supervisor "began screaming and yelling at him, and swung a large and dense contract file, about 4" thick with the constancy [sic] of a large brick, in Mr. Battle's face" and almost hit him. *Id.* He "reported this conduct to the NIH police" and management. *Id.* ¶¶ 14–15.

On June 13, 2011, Battle had "sought EEO [Equal Employment Opportunity] counseling which was reported to upper management," and he filed a formal complaint with the Agency's EEO office on August 10, 2011. *Id.* ¶¶ 12, 27. He amended his EEO complaint in September and October 2011, ultimately "charg[ing] discrimination and a hostile work environment based on race [and] sex[,] and retaliation," based on the above allegations. *Id.* ¶ 27.

In January 2012, his supervisor revoked his telecommuting schedule and his "official duties as a Lead Team Specialist." *Id.* ¶ 21. In December 2012, his supervisor mischaracterized his leave under the Family and Medical Leave Act ("FMLA"), 29 U.S.C. §§ 2601 – 2654, "and

---

[3] The additional factual allegations that Plaintiff improperly included in his Opposition will not be considered here. *See Zachair, Ltd. v. Driggs*, 965 F. Supp. 741, 748 n.4 (D. Md. 1997) ("[The plaintiff] is bound by the allegations contained in its complaint and cannot, through the use of motion briefs, amend the complaint."), *aff'd*, 141 F.3d 1162 (4th Cir. 1998).

then placed him in LWOP [leave without pay] status."[4] *Id.* ¶ 16.   However, Plaintiff concedes that "the leave discrepancy was discovered and corrected."  Pl.'s Opp'n 10 n.5.  One month later, his supervisor failed to "report[] the results of his ergonomic study to the  NIH Office of Medical Services and Employee Relations, . . . resulting in his medical condition worsening."  Second Am. Compl. ¶ 17.  Also in January 2013, his supervisor refused to acknowledge a project he completed, "which resulted in a lowered 2012 performance rating."  *Id.* ¶ 18.

Battle sought EEO counseling again on February 3, 2013, and filed another formal complaint on March 3, 2013 "based on retaliation, discrimination based on race, sex and physical disability, hostile work environment, harassment, and time and attendance violations."  *Id.* ¶ 28. He received a notice of right to sue for both complaints.  *Id.* ¶ 29.

In March 2013, he received a Letter of Reprimand and was "charged AWOL for 2 hours with no valid explanation."  *Id.* ¶ 19.  The next month, "Plaintiff's supervisor developed a false and deceptive report that was forwarded to the Office of Medical Services regarding his request for a reasonable medical accommodation."  *Id.* ¶ 20.  Also in April 2013, his "supervisor down rated his final 2012 Performance Evaluation to unsatisfactory, and placed him on a performance improvement plan (PIP)."  *Id.* ¶ 21.  He was denied a pay increase in 2013.  *Id.* ¶ 26.

He received a "hostile and threatening" email (the content of which nowhere appears in the record) from the Director of Contracting in July 2013, *id.* ¶ 22, and his female supervisor "would say shocking and demeaning things" in his PIP meetings, including "'Blow me!'" *Id.*

---

[4] "The Family and Medical Leave Act 'permits an eligible employee to choose to substitute accrued paid leave for FMLA leave,'" which otherwise is unpaid. *Lopez v. City of Gaithersburg*, No. RDB-15-1073, 2016 WL 4124215, at *13 n.15 (D. Md. Aug. 3, 2016) (quoting 29 C.F.R. § 825.207(a)).  As best I can discern, Battle "'cho[]se to substitute accrued paid leave for FMLA leave,'" and the Agency did not honor his choice.  *See id.*

¶ 23.  He was placed on administrative leave in August 2013.  *Id.* ¶ 24.  He amended his second EEO complaint to encompass all of these allegations.  Def.'s Mem. 8–9.

The Agency terminated Battle's employment in July 2014.  *Id.* ¶ 6.  He initiated this suit without an attorney on July 15, 2014.  Pl.'s Opp'n 3.  He then sought EEO counseling on July 24, 2014 and filed a third EEO complaint on August 28, 2014, alleging discrimination and retaliation based on the termination of his employment.  *Id.*  He participated in a settlement conference but did not reach an agreement.  *Id.* at 4.  Purportedly on the advice of an administrative law judge, Battle withdrew his third EEO complaint and filed an appeal of his termination with the Merit Systems Protection Board ("MSPB").  *Id.*  He then withdrew his MSPB appeal.  *Id.*  He tried to renew his third EEO complaint, but "was informed that he could not continue with his NIH EEO complaint . . . once the claim had been cancelled."  *Id.*

## Standard of Review

"[F]ederal courts lack subject matter jurisdiction over Title VII claims for which a plaintiff has failed to exhaust administrative remedies."  *Murphy v. Adams*, No. DKC-12-1975, 2014 WL 3845804, at *7 (D. Md. Aug. 4, 2014) (quoting *Balas v. Huntington Ingalls Indus., Inc.*, 711 F.3d 401, 406 (4th Cir. 2013)).  Because the Agency argues, with regard to some of the alleged discriminatory acts, "'that [the] complaint simply fails to allege facts upon which subject matter jurisdiction can be based,' . . . 'the facts alleged in the complaint are assumed to be true and the plaintiff, in effect, is afforded the same procedural protection as he would receive under a Rule 12(b)(6) consideration.'"  *Fontell v. MCGEO UFCW Local 1994*, No. AW-09-2526, 2010 WL 3086498, at *3 (D. Md. Aug. 6, 2010) (quoting *Adams v. Bain,* 697 F.2d 1213, 1219 (4th Cir. 1982)), *aff'd*, 410 F. App'x 645 (4th Cir. 2011); *see also Ford v. Master Sec. Co., LLC*, No. PWG-15-2220, 2016 WL 1752897, at *2 (D. Md. May 3, 2016).

A complaint is subject to dismissal if it "fail[s] to state a claim upon which relief can be granted." Fed. R. Civ. P. 12(b)(6). A complaint must contain "a short and plain statement of the claim showing that the pleader is entitled to relief," Fed. R. Civ. P. 8(a)(2), and must state "a plausible claim for relief," *Ashcroft v. Iqbal*, 556 U.S. 662, 678–79 (2009). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Iqbal*, 556 U.S. at 678. Rule 12(b)(6)'s purpose "'is to test the sufficiency of a complaint and not to resolve contests surrounding the facts, the merits of a claim, or the applicability of defenses.'" *Velencia v. Drezhlo*, No. RDB-12-237, 2012 WL 6562764, at *4 (D. Md. Dec. 13, 2012) (quoting *Presley v. City of Charlottesville*, 464 F.3d 480, 483 (4th Cir. 2006)).

> In evaluating the complaint, unsupported legal allegations need not be accepted. *Revene v. Charles Cnty. Comm'rs*, 882 F.2d 870, 873 (4th Cir. 1989). Legal conclusions couched as factual allegations are insufficient, *Iqbal*, 556 U.S. at 678, as are conclusory factual allegations devoid of any reference to actual events, *United Black Firefighters v. Hirst*, 604 F.2d 844, 847 (4th Cir. 1979); *see also Francis v. Giacomelli*, 588 F.3d 186, 193 (4th Cir. 2009). Ultimately, a complaint must "'permit[] the court to infer more than the mere possibility of misconduct' based upon 'its judicial experience and common sense.'" *Coleman v. Md. Court of Appeals*, 626 F.3d 187, 190 (4th Cir. 2010) (quoting *Iqbal*, 556 U.S. at 679). To this end, "while a plaintiff [in an employment discrimination case] is not required to plead facts that constitute a *prima facie* case in order to survive a motion to dismiss, [f]actual allegations must be enough to raise a right to relief above the speculative level." *Id.* (citing *Swierkiewicz v. Sorema N.A.*, 534 U.S. 506, 510–15 (2002); *Twombly*, 550 U.S. at 555); *see also McCleary-Evans v. Md. Dept. of Transp., State Highway Admin.*, 780 F.3d 582, 585 (4th Cir. 2015).

*Nam v. 2012 Inc.*, No. DKC-15-1931, 2016 WL 107198, at *3 (D. Md. Jan. 11, 2016) (alterations in *Nam*).

## <u>Failure to Exhaust Administrative Remedies</u>

The Agency argues that Plaintiff failed to exhaust his administrative remedies with regard to his discrimination claims based on race and gender, insofar as he alleges that the Agency

discriminated by "giving him a minimally successful rating in his 2010 employment performance evaluation" and "revoking his telecommute schedule," because he did not consult an EEO counselor with regard to either claim and he did not include the telecommuting claim in his second EEO complaint. Def.'s Mem. 20, 21.  The Agency also contends that Plaintiff failed to exhaust his administrative remedies with regard to his claims based on the termination of his employment because he raised these claims in a third EEO complaint and an MSPB appeal, both of which he filed and then withdrew. *Id.* at 13–14.  Although the Agency presents this argument within its discussion of Battle's discrimination claims, it insists that "Plaintiff failed to administratively exhaust *any claims* pertaining to his removal." *Id.* at 13 (emphasis added). Thus, the scope of the Agency's argument is unclear, but because exhaustion is jurisdictional, *see Balas*, 711 F.3d at 406; *Murphy*, 2014 WL 3845804, at *7, I will address consider whether Battle exhausted any of his claims based on the termination of his employment.

One "requirement for exhausting administrative remedies is that the aggrieved individual 'must consult a Counselor prior to filing a complaint in order to try to informally resolve the matter.'" *Mallik v. Sebelius*, 964 F. Supp. 2d 531, 540 (D. Md. 2013) (quoting 29 C.F.R. § 1614.105(a)); *see also Upshaw v. Tenenbaum,* No. PWG-12-3130, 2013 WL 3967942, at *5 (D. Md. July 31, 2013) ("A prospective plaintiff's failure to contact an EEO Counselor within the 45 days prescribed 'is tantamount to failure to timely exhaust all administrative remedies . . . .'").

> The deadline for contacting an EEO counselor is "within 45 days of the date of the matter alleged to be discriminatory or, in the case of personnel action, within 45 days of the effective date of the action," [29 C.F.R.] § 1614.105(a)(1), unless the individual has a reasonable explanation for his delay, in which case the EEOC [Equal Employment Opportunity Commission] will extend the deadline, *id.* § 1604.105(a)(2).

*Mallik*, 964 F. Supp. 2d at 540.  Generally, "if the plaintiff fails to seek EEOC counseling within the prescribed time period," the federal court "must dismiss an employment discrimination claim." *Van Durr v. Geithner*, No. AW-12-2137, 2013 WL 4087136, at *4 (D. Md. Aug. 12, 2013) (quoting *Emmert v. Runyon*, No. 98-2027, 1999 WL 253632, at *2 (4th Cir. Apr. 29, 1999) (per curiam)); *see Tartal v. Henderson*, No. 99-2007, 2000 WL 384037, at *1 (4th Cir. Apr. 17, 2000) (per curiam) (affirming dismissal of hostile work environment claim where employee "did not contact an [EEO] counselor within forty-five days of the alleged discriminatory events that created the hostile work environment"); *Dorr v. Brown*, No. 98-2703, 1999 WL 498709, at *1 (4th Cir. July 15, 1999) (per curiam) (affirming the dismissal of a hostile work environment claim where the employee "did not contact an [EEO] counselor within 45 days of the alleged discriminatory events" and "the only event that occurred within the 45-day period prior to meeting with the EEO counselor [was] insufficient to establish a continuing violation").

The other requirement for exhausting administrative remedies is that the employee must have filed a timely charge with the EEOC or the Agency's EEO office.  *Smith v. First Union Nat'l Bank*, 202 F.3d 234, 247 (4th Cir. 2000); *Jones v. Calvert Group, Ltd.*, 551 F.3d 297, 300 (4th Cir. 2009).  Alternatively, in a "mixed case[]" such as Battle's third EEO claim, "in which the plaintiff alleges claims of discrimination and claims of prohibited personnel practices, not based on discrimination," the employee may file an MSPB appeal instead.[5]  *Briggs v. Dalton*, 984 F. Supp. 353, 354–55 (D. Md.), *aff'd*, 129 F.3d 1258 (4th Cir. 1997); *see also* 29 C.F.R. § 1614.302(a)–(b).  Significantly, the employee may file "a complaint with the agency's EEO

---

[5] "The actions entitling an employee to appeal a case to the MSPB include '(1) a removal; (2) a suspension for more than 14 days; (3) a reduction in grade; (4) a reduction in pay; and (5) a furlough.'" *Kloeckner v. Solis*, 133 S. Ct. 596, 601 (2012) (quoting 5 U.S.C. § 7512).  Thus, Battle's third EEO claim based on his termination was his first claim that could have been brought to the MSPB.  *See id.*

department or . . . an appeal to the MSPB, but not both." *Briggs*, 984 F. Supp. at 354–55 (citation omitted); *see Khoury v. Meserve*, 268 F. Supp. 2d 600, 611 (D. Md. 2003) (noting that "th[e] employee may not elect both avenues simultaneously" (citing 29 C.F.R. 1604.302(a)–(b))), *aff'd*, 85 F. App'x 960 (4th Cir. 2004). If "an employee attempts to pursue both avenues, '[w]hichever is filed first is then considered the employee's election [*see* 29 C.F.R. § 1614.302(b)], and once chosen, the employee must exhaust [her] remedies in that forum.'" *Hunter v. Vilsack*, No. DKC-07-2655, 2010 WL 1257997, at *9 (D. Md. Mar. 26, 2010) (quoting *Devaughn v. U.S. Postal Serv.*, 293 F. App'x 276, 280 (5th Cir. 2008) (unpublished)); *see Checketts v. Merit Sys. Prot. Bd.*, 50 F. App'x 979, 981 (Fed. Cir. 2002) ("Once [an] employee elects to file a discrimination complaint directly with the employing agency, . . . the statute [5 U.S.C. § 7702] grants further jurisdiction to the [MSPB] to hear the complaint only *after* the employee has exhausted the EEO complaint process.").

"[T]he scope of a Title VII lawsuit may extend to any kind of discrimination like or related to allegations contained in the charge and growing out of such allegations during the pendency of the case before the Commission." *Nealon v. Stone*, 958 F.2d 584, 590 (4th Cir. 1992)[6] (quoting *Hill v. W. Elec. Co.*, 672 F.2d 381, 390 n.6 (4th Cir. 1982) (citation and quotation marks omitted)); *cf. Riley v. Tech. & Mgmt. Servs. Corp.*, 872 F. Supp. 1454, 1459 (D. Md. 1995) (rejecting claims of hostile work environment and sexual harassment presented for the first time in plaintiffs' opposition because the EEO charges only alleged discrimination, and "[c]ourts may only exercise jurisdiction over claims encompassed within the EEO charge and claims 'like or related to allegations contained in the charge, or which grow out of such allegations'" (quoting *Nealon*, 958 F.2d at 590)), *aff'd*, 79 F.3d 1141 (4th Cir. 1996). Similarly,

---

[6] In *Nealon*, the Fourth Circuit applied this "generally accepted principle" to conclude that "a plaintiff may raise [a] retaliation claim for the first time in federal court." 958 F.2d at 590.

"retaliatory acts that follow the filing of a formal EEOC complaint are reasonably related to the complaint and thus may be raised for the first time in district court," *Hunter*, 2010 WL 1257997, at *8; *see also* 958 F.2d at 590.  However, this "rule does not apply . . . where a plaintiff's claims of retaliation could have been raised in her EEOC charge, but were not." *Hunter*, 2010 WL 1257997, at *8 (citing *Jones v. Calvert Grp., Ltd.,* 551 F.3d 297, 303 (4th Cir. 2009); *Cherry v. Bealefeld*, No. CCB-08-1228, 2010 WL 917421, at *6–7 (D. Md. March 9, 2010).

> This Court observed:
>
> One of the primary reasons for allowing plaintiffs to allege retaliation for the first time in court is that plaintiffs who face retaliation after filing one EEOC charge will likely be reluctant to file additional charges for fear of further reprisal. *See Jones,* 551 F.3d at 302. Yet if a plaintiff faces retaliation and *then* chooses to file an EEOC complaint, there is little reason not to require her to exhaust her retaliation claim by including it in her EEOC charge. Therefore, the normal rules of exhaustion must apply to claims of retaliation that predate the filing of an EEOC charge.

*Hunter*, 2010 WL 1257997, at *8 (quoting *Cherry*, 2010 WL 917421, at *7 (emphasis in original)).  Moreover, "if an employee files a formal complaint or appeal, but withdraws or settles it before a final decision is issued, the employee has not exhausted her remedies and thus may not file suit." *Hart v. Lew*, 973 F. Supp. 2d 561, 576 (D. Md. 2013); *see also Khoury*, 268 F. Supp. 2d at 610–11 ("It is well-established that a complainant who withdraws an appeal before the MSPB fails to exhaust administrative remedies and is barred from filing a civil action in federal court."); *Ward v. U.S. Dep't of Commerce*, No. GJH-15-817, 2016 WL 4099071, at *1 (D. Md. Aug. 2, 2016) ("To the extent Plaintiff seeks to raise discrimination claims in addition to her claim of retaliation, such claims are subject to dismissal because Plaintiff failed to exhaust her administrative remedies by withdrawing those claims before the MSPB.").

2010 Performance Evaluation

The Agency contends that Battle "failed to timely contact an EEO Counselor" regarding the alleged discrimination in his 2010 performance evaluation and therefore did not exhaust his administrative remedies.  Def.'s Mem. 20.  Plaintiff does not state when he received his "final 2010 performance evaluation," *see* Second Am. Compl. ¶ 9; nor does he dispute the Agency's assertion that he received it on February 8, 2011, *see* Def.'s Mem. 20. In the section of his Complaint titled "Exhaustion of Administrative Remedies," he claims that he "sought EEO counseling on or about June 13, 2011," and again on February 3, 2013.  Second Am. Compl. ¶¶ 27–28.  He does not address the timeliness of his contact with an EEO counselor in his Opposition. Consequently, on the record before me, it is undisputed that Plaintiff did not contact an EEO counselor within forty-five days after receiving his 2010 evaluation in February 2011. Moreover, Plaintiff does not argue that his deadline for contacting an EEO counselor after this alleged incident should have been extended. *See* 29 C.F.R. § 1604.105(a)(2).

Plaintiff argues instead that his allegation of race and gender discrimination based on his 2010 evaluation "was timely filed, and is part and parcel of Mr. Battle's first administrative complaint."  Pl.'s Opp'n 8. As best I can discern, he is invoking the continuing violation theory. The Fourth Circuit previously held that this theory applied to discriminatory and hostile work environment claims alike, such that "[i]ncidents outside of the statutory window" were not time-barred if they "related to a timely incident as a 'series of separate but related acts' amounting to a continuing violation." *Beall v. Abbott Labs.*, 130 F.3d 614, 620 (4th Cir. 1997) (quoting *Jenkins v. Home Ins. Co.*, 635 F.2d 310, 312 (4th Cir. 1980) (per curiam)).

But, the Supreme Court differentiated hostile environment claims from claims of "discrete acts" of discrimination in *National Railroad Passenger Corp. v. Morgan*, holding that

"discrete discriminatory acts are not actionable if time barred, even when they are related to acts alleged in timely filed charges," because "[e]ach discrete discriminatory act starts a new clock for filing charges alleging that act."  536 U.S. 101, 113 (2002); *see also Green v. Brennan*, 136 S. Ct. 1769, 1781 n.7 (2016) (noting that *Morgan* held that, "unlike a hostile-work-environment claim that may comprise many discriminatory acts, discrete claims of discrimination based on independent discriminatory acts cannot be aggregated to extend the limitations period"); *Smith v. Vilsack*, 832 F. Supp. 2d 573, 581 (D. Md. 2011) ("[T]he 'continuing violation' theory, which 'allows for consideration of incidents that occurred outside the time bar when those incidents are part of a single, ongoing pattern of discrimination,' . . . only applies . . . when an employee asserts a hostile work environment claim." (quoting *Holland v. Wash. Homes, Inc.*, 487 F.3d 208, 219 (4th Cir. 2007))); *Mallik*, 964 F. Supp. 2d at 541 (same).  Thus, it is clear that Battle failed to exhaust his race and gender discrimination claims based on the alleged downgrading of his 2010 performance evaluation, which occurred more than forty-five days before he first contacted an EEO counselor.  *See Morgan*, 536 U.S. at 113; *Green*, 136 S. Ct. at 1781 n.7.  To the extent that Battle's discrimination claims in Counts One and Two are based on his 2010 performance evaluation, they are dismissed for lack of subject-matter jurisdiction.  *See Mallik*, 964 F. Supp. 2d at 540.

<u>Termination of Employment</u>

According to the Agency, Plaintiff's withdrawal of his third EEO complaint, where he alleged for the first time that the termination of his employment was discriminatory and retaliatory, was fatal to his claims based on his termination.  Def.'s Mem. 14.  The Agency insists that when Battle withdrew his third EEO complaint, he "strip[ped] this Court, and even the MSPB, of jurisdiction to hear any subsequent appeal by the employee."  *Id.*  It is true that "no

one is entitled to judicial relief for a supposed or threatened injury until the prescribed administrative remedy has been exhausted," *Myers v. Bethlehem Shipbuilding Corp.*, 303 U.S. 41, 50–51 (1938), and "if an employee files a formal complaint or appeal, but withdraws . . . it before a final decision is issued, the employee has not exhausted [his] remedies and thus may not file suit." *Hart v. Lew*, 973 F. Supp. 2d 561, 576 (D. Md. 2013). Battle insists that he can bring his termination-based claims along with his exhausted claims, despite the withdrawal, because "[a]ll of [his] claims relate to and arise from the same pattern of discriminatory and retaliatory actions and reprisals committed by the Defendant." Pl.'s Opp'n 2–3.

As noted, "the scope of a Title VII lawsuit may extend to any kind of discrimination like or related to allegations contained in the [EEO] charge and growing out of such allegations." *Nealon*, 958 F.2d at 590. Certainly, when the Agency terminated Plaintiff's employment in July, 2014, Battle already had "filed a formal [EEO] complaint on or about August 10, 2011," and "another formal [EEO] complaint on or about March 3, 2013," both of which alleged discrimination based on race and sex. Second Am. Compl. ¶¶ 6, 27–28. Battle's race and gender discrimination claims based on his termination are a logical extension of his previous allegations of discrimination, based on his poor performance evaluations, denial of promotions, and being placed on administrative leave, with the termination of his employment as the culmination of the previous acts. Similarly, his termination could be viewed as the final retaliatory act in an alternating series of EEO filings and retaliatory acts.

Yet, his termination also was the subject of Battle's third EEO complaint, which he withdrew, and the subject of the MSPB appeal that Battle subsequently filed and withdrew. Although it does not appear that the MSPB had jurisdiction to hear Battle's appeal, given that he first filed an EEO complaint with regard to his termination and therefore had to see that claim

through before appealing to the MSPB, *see* 5 U.S.C. § 7702(a)(2), (e)(2); *Checketts*, 50 F. App'x at 981, the MSPB had not dismissed Battle's appeal at the time he withdrew it.  Because Plaintiff had the opportunity to raise—and indeed raised—his discrimination and retaliation claims based on his termination in his third EEO complaint and his MSPB appeal, "the normal rules of exhaustion must apply."  *Hunter*, 2010 WL 1257997, at *8 (quoting *Cherry*, 2010 WL 917421, at *7).

*Hunter*, 2010 WL 1257997, provides guidance.  Hunter, like Battle, filed a formal EEO complaint alleging race, color, and gender discrimination, harassment, and a hostile work environment. *Id.* at *2 She, like Battle, experienced an adverse personnel action (hers was suspension following her EEO activity, rather than termination), and she, like Battle, sought to bring the claim before the EEO office.  *Id.* at *3.  She "filed a supplemental EEO complaint for retaliation," listing "'Proposed Resignation'" as the claim.  *Id.* Then she, like Battle, "advised the Agency's EEO office that she had 'decided to appeal [the] suspension to the Merit Systems Protection Board'" and "'[would] not be challenging the proposed disciplinary action in the EEO process.'"  *Id.*  The same day, she "filed an appeal of her suspension with the MSPB," alleging that she "'was suspended for 30 calendar days because of race discrimination.'"  *Id.* at *4.  She later informed the administrative law judge that her "suspension [was] the product of both discrimination *and EEO retaliation*."  *Id.* (emphasis added).  The administrative law judge affirmed the suspension and "also addressed Plaintiff's 'affirmative defenses of retaliation for engaging in EEO activity and discrimination on the bases of race and gender.'"  *Id.* The plaintiff then filed suit in federal court alleging race and gender discrimination, a hostile work environment, and retaliation, but she "conceded dismissal of her hostile work environment claim." *Id.* at *5.

With regard to the retaliation claim, the Court observed that "Plaintiff at least made a good faith attempt to raise her retaliation claim before the EEO" when she submitted a supplemental EEO filing, and a "[g]ood faith effort by the employee to cooperate with the agency and the EEOC and to provide all relevant, available information is all that exhaustion requires." *Id.* at *8 (quoting *Wade v. Sec'y of the Army*, 796 F.2d 1369, 1377 (11th Cir. 1996)). At that point, the plaintiff "technically committed to pursue all of her claims as a 'mixed case complaint' before the EEOC." *Id.* at *9.  But, the Court noted, the MSPB had accepted "Plaintiff's 'mixed case appeal,' which under the somewhat unique procedural history of th[e] case, essentially rendered the prior EEO complaint a nullity," even if it otherwise would have been exhausted. *Id.* at *8.  Consequently, "her election to proceed before the MSPB as a 'mixed case appeal,' rather than before the EEO as a 'mixed case complaint,' was binding and defined the scope of the claims she could raise in this court." *Id.* at *9. Because she "fail[ed] to raise her retaliation claim on the face of her MSPB appeal papers," the Court stated that it "would appear" that she failed to exhaust that claim. *Id.* at *10.  But, considering that her informal notification to the administrative law judge that she was raising retaliation as well "could be considered an attempt to import the claims she raised previously before the EEO, thereby exhausting her administrative remedies before the MSPB, the court . . . consider[ed] the merits of her retaliation claim out of an abundance of caution." *Id.*

*Khoury v. Meserve*, 268 F. Supp. 2d 600 (D. Md. 2003), also is informative.  There, as happened here, the employee filed a formal EEO complaint alleging discrimination. *Id.* at 604. Then, after the employer terminated her employment, she appealed the termination to the MSPB, including claims of discriminatory discharge based on sex and national origin in her appeal. *Id.* at 605, 610.  She subsequently withdrew her discrimination claims, proceeding before the MSPB

only on her retaliation claim. *Id.* at 610. She filed suit in this Court, alleging discrimination and retaliation, *id.* at 605, and Judge Chasanow dismissed the discrimination claim for failure to exhaust administrative remedies, *id.* at 611. Judge Chasanow rejected the plaintiff's argument that "when she withdrew her termination claims based on gender and national origin from the MSPB appeal, those claims were still viable in her complaint filed with the . . . EEO office." *Id.* The Court reasoned that the plaintiff's claims could not be brought simultaneously through an EEO complaint and an MSPB appeal, and "Plaintiff pursued her termination claims in a mixed case appeal before the MSPB" and then withdrew them from that appeal, such that she failed to exhaust her administrative remedies on those claims. *Id.*

Here, Plaintiff first raised his claim based on the termination of his employment before the EEO office. Therefore, he should have been committed to pursuing it before the Agency's EEO office. Not only did he withdraw it, thereby undoing any good faith effort to "provide all relevant, available information" that could be an extension of his prior EEO complaints, but he also filed an appeal before the MSPB and "essentially rendered the prior EEO complaint a nullity," given that here, as in *Hunter*, the MSPB accepted the claims even though they previously were filed with the EEO office. Thus, by filing and then withdrawing his MSPB appeal, he failed to exhaust his claims based on his termination.[7] Unlike in *Hunter*, 2010 WL 1257997, at *10, the claim ultimately was not heard by either the Agency's EEO office or the MSPB. As in *Khoury*, 268 F. Supp. 2d at 611, the later-filed and accepted MSPB appeal prevents Battle from pursuing his termination claims through the EEO office. *Cf. Ford v. Master Sec. Co., LLC*, No. PWG-15-2220, 2016 WL 1752897, at *4 (D. Md. May 3, 2016) (concluding

---

[7] To the extent Battle seems to argue that his failure to exhaust administrative remedies should be excused because he was "misled," see Pl.'s Opp'n 5, his argument is unavailing. While he may have withdrawn his EEO claim at the administrative law judge's suggestion, the MSPB accepted his appeal, and he withdrew it of his own accord.

that the plaintiff had exhausted her administrative remedies with regard to claims in a 2014 EEOC charge, despite the fact that she had raised them again in a 2015 charge that *still was pending* before the *EEOC* when the defendant moved to dismiss).  And, as in *Khoury*, 268 F. Supp. 2d at 611, Battle's withdrawal of the issues before the MSPB on appeal rendered his termination claims unexhausted. *See also Austin v. Winter*, 286 F. App'x 31, 35 (4th Cir. 2008) (affirming summary judgment based on failure to exhaust administrative remedies where employee "initially availed herself of the administrative process but *never* followed the process through to completion").  Therefore, Battle failed to exhaust his administrative remedies with regard to the termination of his employment.  This Court lacks subject-matter jurisdiction over these claims, which must be dismissed.  *See Hunter*, 2010 WL 1257997, at *9–10; *Khoury*, 268 F. Supp. 2d at 611.

### Telecommuting Schedule

Plaintiff alleges that the Agency revoked his telecommuting schedule in January 2012. Second Am. Compl. ¶ 21.  As noted, he claims that he "sought EEO counseling on or about June 13, 2011," before his telecommuting privilege was revoked, and again on February 3, 2013, more than forty-five days after it was revoked in January 2012.  Second Am. Compl. ¶¶ 27–28. According to the Agency, Battle "did not seek EEO counseling" regarding the revocation of his telecommuting schedule and did not include it "in any of his three formal [EEO] complaints," and consequently failed to exhaust his administrative remedies.  Def.'s Mem. 21.  Again, Battle does not address the timeliness of his contact with an EEO counselor in his Opposition. Consequently, it is undisputed on the record before me that Plaintiff did not contact an EEO counselor within forty-five days after this alleged discriminatory act either. And, again, Plaintiff

does not argue that his deadline for contacting an EEO counselor after his telecommuting schedule was revoked should have been extended. *See* 29 C.F.R. § 1604.105(a)(2).

As for including this alleged discriminatory act in any of his EEO complaints, Battle insists that this claim is "part and parcel of the discrimination that arose when the Agency's employee singled out Mr. Battle as a result of his race and sex and directed him to engage in illegal contract activities," and also contends that this claim is "included in the second administrative complaint, as well as in the discussions and interviews with the witnesses therein." Pl's Opp'n 10. In his second EEO complaint, he claimed "retaliation for prior protected activity, discrimination on the basis of physical disability, hostile work environment, and harassment" based, in part, on the denial of his "physician validated request for the reasonable accommodation of telework for up to two days per week, due to a well documented physical (chronic) medical condition." Jt. Ex. 1522.[8] He did not, however, allege that the revocation of his telework schedule was race or gender discrimination. *See id.*

The allegation of race and gender discrimination based on the revocation of this privilege arguably is related to allegations contained in Battle's first EEO complaint, in which he alleged that an "[u]nqualified employee [was] appointed as Acting Director of Contract over [him]self, a qualified employee"; he was "[b]ullied" and "directed to perform illegal actions"; he was "not selected for promotion to Branch Chief"; his supervisor inaccurately appraised his performance without "consider[ing] [the] first half of the year 2010 narrative from another supervisor, or

---

[8] Battle's EEO complaints appear in the Joint Exhibits. When reviewing a motion to dismiss, I "may consider . . . documents attached to the motion to dismiss, if they are integral to the complaint and their authenticity is not disputed." *Sposato v. First Mariner Bank*, No. CCB-12-1569, 2013 WL 1308582, at *2 (D. Md. Mar. 28, 2013); *see CACI Int'l v. St. Paul Fire & Marine Ins. Co.*, 566 F.3d 150, 154 (4th Cir. 2009). Battle's administrative pleadings are integral to his claims of exhaustion of administrative remedies, *see* Second Am. Compl. ¶¶ 27–30, and Battle does not dispute their authenticity. Therefore I will consider them. *See Sposato*, 2013 WL 1308582, at *2; *CACI Int'l*, 566 F.3d at 154.

awards rec[ei]ved"; and he was not selected "as the Acting Director of Contract" when he was "highest qualified" and the person assigned was "an unqualified employee." Jt. Ex. 21–22. That similarity generally would suffice for the Court to exercise jurisdiction over claims based on this act. *See Nealon*, 958 F.2d at 590. But, Battle filed two subsequent EEO complaints, one of which he amended, in which he could have, but did not, raise this basis for his discrimination claims. Under these circumstances, "the normal rules of exhaustion must apply," and this Court lacks jurisdiction over Battle's discrimination claims to the extent that they are based on the revocation of his telecommuting privilege. *See Hunter*, 2010 WL 1257997, at *8; *Bonds v. Leavitt*, 647 F. Supp. 2d 541, 555 (D. Md. 2009) (concluding that plaintiff "failed to exhaust her administrative remedies because she did not include the [discrimination] claim regarding the investigation [which she viewed as an adverse employment action] in her EEO Complaint even though she could have raised it at the time because she was aware of the investigation and even though she amended her 2005 EEO Complaint *twice and* then filed a new EEO Complaint after her termination"), *aff'd in part, rev'd in part on other grounds*, 629 F.3d 369 (4th Cir. 2011).

### **Failure to State a Claim**

### Discrimination

In Counts One and Two for discrimination, Plaintiff asserts that "[t]he foregoing paragraphs as well as the information in Plaintiff's original [200 page] complaint are re-alleged and incorporated by reference herein," without identifying any specific discriminatory acts. Second Am. Compl. ¶¶ 31, 37. And, he argues that his discrimination claims are "in essence a retaliation claim," Pl.'s Opp'n 6, *see id.* at 11, and that the discrete acts are "evidence of and part and parcel of the ongoing discriminatory actions during this time period," *id.* at 9; *see id.* at 2–3 ("All of Plaintiff's claims relate to and arise from the same pattern of discriminatory and

retaliatory actions . . . ."); *id.* at 10 ("[T]hese claims are alleged to be part and parcel of the discrimination that arose . . . ."). Thus, contrary to the mandates of Rule 8(a)(2) (which requires pleadings to be "short and plain") and 8(d)(1) (which requires pleadings to be "simple, concise and direct"), it is unclear as pleaded which acts are alleged to be discriminatory.

Defendant identifies ten allegedly discriminatory acts, Def.'s Mem. 2, and Plaintiff does not argue that he pleaded any others. Plaintiff's acquiescence to Defendant's characterization of the specific acts that are alleged to be the basis for his complaint is tantamount to an admission that Defendant's list is accurate. Fed. R. Evid. 801(d)(2)(B). Those ten acts are:

> [T]he Agency discriminated against him by: (1) downgrading his 2010 final employment performance evaluation; (2) passing over him for a promotion to a Branch Chief position; (3) passing over him for a promotion to a Director of Contracting position; (4) improperly categorizing his leave requests; (5) failing to properly report the results of his ergonomic study; (6) lowering his 2012 performance rating; (7) issuing a March 2013 letter of reprimand and charging him with AWOL for 2 hours; (8) revoking his telecommute schedule; (9) denying him a step increase to GS-14, step 5; and (10) terminating his employment.

*Id.*; *see also* Second Am. Compl. Defendant argues that Battle makes only "bald assertions that his supervisors discriminated against him by giving him a low 2012 performance rating, issuing a March 2013 letter of reprimand, and denying him a pay raise." Def.'s Mem. 3. Additionally, Defendant contends that Plaintiff fails to show that the mischaracterization of his leave requests or the delayed reporting of the ergonomic study "resulted in . . . adverse employment action[s]." *Id.* at 3, 22 n.7. According to the Agency, "[t]he non-selection claims . . . fail to set forth a *prima facie* case." *Id.*

To state claims of gender and racial discrimination in violation of Title VII, Battle must allege "(1) membership in a protected class; (2) satisfactory job performance; (3) an adverse employment action; and (4) less favorable treatment than similarly situated employees outside the protected class." *Linton v. Johns Hopkins Univ. Applied Physics Lab., LLC,* No. JKB-10-276,

2011 WL 4549177, at *5 (D. Md. Sept. 28, 2011) (citing *White v. BFI Waste Servs.*, 375 F.3d 288, 295 (4th Cir. 2004)); *see also Coleman v. Md. Court of Appeals*, 626 F.3d 187, 190 (4th Cir. 2010). And, more specifically, to state a claim for discrimination based on non-selection for a position, a plaintiff must allege that "(i) he belongs to a protected class, (ii) he applied and was qualified for a job for which the employer was seeking applicants, [and] (iii) despite his qualifications, he was rejected." *EEOC v. Sears Roebuck & Co.*, 243 F.3d 846, 851 (4th Cir. 2001). He also must allege that either "(iv) after his rejection, the position remained open and the employer continued to seek applicants from persons of his qualifications," *id.*, or, if "the position sought was filled, . . . that someone outside of the plaintiff's protected group ultimately was selected for the position." *Venable v. Pritzker*, No. GLR-13-1867, 2014 WL 2452705, at *13 (D. Md. May 30, 2014) (quoting *Langerman v. Thompson,* 155 F. Supp. 2d 490, 495 (D. Md. 2001)), *aff'd,* 610 F. App'x 341 (4th Cir. 2015). As noted, "while a plaintiff [in an employment discrimination case] is not required to plead facts that constitute a *prima facie* case in order to survive a motion to dismiss, [f]actual allegations must be enough to raise a right to relief above the speculative level." *Coleman v. Md. Court of Appeals*, 626 F.3d 187, 190 (4th Cir. 2010).

The Agency argues that Plaintiff's claim of discrimination in his non-selection as Branch Chief fails because he had not applied for the position at the time the Agency selected and hired a white woman. Def.'s Mem. 24.[9] Battle concedes that he did not apply. Pl.'s Opp'n 14 n.8.

---

[9] Defendant also argues that Plaintiff failed to allege that he was better qualified for this position. Def.'s Mem. 3. Yet, Plaintiff's allegation that he was acting in this position, while the person selected was unqualified, is arguably sufficient. *See Wesley v. Arlington Cnty.*, 354 F. App'x 775, 779–80 (4th Cir. 2009) (stating that the fact that plaintiff "served as an acting captain on numerous occasions, apparently without incident, . . . demonstrate[ed] she could in fact perform the duties required of the position [of captain]").

Thus, his acknowledgment that he did not receive a job for which he failed to apply cannot "raise a right to relief above the speculative level." *See Coleman*, 626 F.3d at 190.

Even if Battle properly alleged in his pleading that he did not apply "due to Defendant's shenanigans" in timing its advertisement of the position so that Plaintiff would not have time to apply for it, as Plaintiff posits in his Opposition, Pl.'s Opp'n 14 n.8, it still would be nothing more than speculation. It is not reasonable for the Court to infer the Agency's liability for Plaintiff's failure to apply for a position, because doing so would be premised on a "conclusory factual allegation devoid of any reference to actual events." *See United Black Firefighters v. Hirst*, 604 F.2d 844, 847 (4th Cir. 1979). Therefore, Plaintiff has not stated a claim for race or gender discrimination based on his non-selection as Branch Chief. *See Iqbal*, 556 U.S. at 678; *Coleman*, 626 F.3d at 190; *United Black Firefighters*, 605 F.2d at 847.

The Agency further contends that Plaintiff's conclusory allegations that his non-selection as Director of Contracting was discriminatory are insufficient to state a claim. Def.'s Mem. 31. With regard to this alleged act of discrimination, Plaintiff claims, in full: "In August 2011, Mr. Daniel Wheeland retaliated against the Plaintiff when he did not hire Mr. Battle as Supervisor of Contracting GS-1102-15 even though his qualifications were superior to the selected applicant Ms. Sharon Bruce." *Id.* ¶ 13. Battle does not allege Bruce's race, so this certainly does not support Plaintiff's claim of race discrimination. *See Venable*, 2014 WL 2452705, at *13. And, his allegation that "his qualifications were superior" is purely conclusory, with no facts provided regarding his own or Bruce's qualifications for this position. Therefore, Battle fails to state a claim for race or gender discrimination based on his non-selection as Director of Contracting. *Coleman*, 626 F.3d at 190; *United Black Firefighters*, 604 F.2d at 847; *Venable*, 2014 WL 2452705, at *2.

The Agency also challenges whether the mischaracterization of Plaintiff's FMLA leave or the delayed reporting of an ergonomic study, *see* Second Am. Compl. ¶¶ 16–17, constitutes an adverse employment action.  Def.'s Mem. 21–22 & n.7.  "An adverse employment action is a discriminatory act which adversely affect[s] the terms, conditions, or benefits of the plaintiff's employment." *James v. Booz–Allen & Hamilton, Inc.,* 368 F.3d 371, 375 (4th Cir. 2004) (citations and internal quotation marks omitted). "Typically, an adverse employment action has been found in cases of 'discharge, demotion, decrease in pay or benefits, loss of job title or supervisory responsibility, or reduced opportunities for promotion." *Barrett v. Bio–Medical Applications of Md., Inc.*, No. ELH-11-2835, 2013 WL 1183363, at *18 (D. Md. March 19, 2013) (quoting *Boone v. Goldin,* 178 F.3d 253, 255 (4th Cir. 1999)). The act need not be an "ultimate employment decision," *James,* 368 F.3d at 375–76 (citation and internal quotation marks omitted), but the effect must be tangible, *id.* at 377. This element "ensures that employees do not use Title VII to provide 'redress for trivial discomforts endemic to employment.'" *Matthews v. Bd. of Educ. of Howard Cnty.*, No. GLR-12-1758, 2013 WL 3506922, at *3 (D. Md. July 10, 2013) (quoting *Boone,* 178 F.3d at 256), *abrogated on other grounds by Burlington N. & Santa Fe Ry. v. White,* 548 U.S. 53, 67 (2006)). Simply put, "'Title VII does not remedy everything that makes an employee unhappy.'" *Wright v. Kent Cnty. Dep't of Soc. Servs.*, No. ELH-12-3593, 2014 WL 301026, at *14 (D. Md. Jan. 24, 2014) (quoting *Jeffers v. Thompson*, 264 F. Supp. 2d 314, 329 (D. Md. 2003)).

The mischaracterization of Plaintiff's leave such that he did not receive pay could amount to an adverse employment action had he lost pay.  *See James,* 368 F.3d at 375; *Barrett*, 2013 WL 1183363, at *18.   But, Battle concedes that "the leave discrepancy was discovered and corrected," arguing that the action was adverse nonetheless because "had Mr. Battle not called

this discrepancy to [his supervisor's] attention, it *may not* have been addressed, and *would have* caused Mr. Battle to use leave from a source that he *may have* preferred to use for other matters." Pl.'s Opp'n 10 n.5 (emphasis added).  What "may have" been is pure speculation that does not suffice to state a claim.  *See Coleman*, 626 F.3d at 190; *United Black Firefighters*, 604 F.2d at 847.  The failure to report an ergonomic study cannot be viewed as an adverse employment action as it did not affect his employment status.  *See Barrett*, 2013 WL 1183363, at *18.

Moreover, as noted, there are no allegations whatsoever that in either instance he received "less favorable treatment than similarly situated employees outside the protected class." *See Linton*, 2011 WL 4549177, at *5.  Indeed, with the exception of his non-selection allegations, Battle does not allege how other employees who were not African American or not male were treated, nor does he compare any instance of specific treatment he received to allege that he received "less favorable treatment than similarly situated employees outside the protected class."  *See Linton*, 2011 WL 4549177, at *5.  Rather, he simply alleges in a conclusory fashion:

> Defendant has discriminated against Plaintiff on the basis of his race/color (African American) by denying him the same terms and conditions of employment available to employees who are not African American, including but not limited to, subjecting him to disparate working conditions and denying him the opportunity to work in an employment setting free of severe and unlawful harassment.
>
> . . . Defendant has discriminated against Plaintiff on the basis of his race/color by creating, fostering, accepting, ratifying and/or otherwise failing to prevent or to remedy a hostile work environment that included, among other things, severe and pervasive harassment of Plaintiff because of his race/color.

Second Am. Compl. ¶¶ 33–34; *see id.* ¶¶ 39–40 (similar allegations with regard to discrimination "on the basis of his gender/sex (male)").  And, with regard to his claim that he was directed to perform illegal acts, he alleges, again in a conclusory fashion, that "[o]ther similarly situated white male, white female or black female employees were not treated in this way."  *Id.* ¶ 9. Consequently, none of his allegations of discriminatory treatment is enough "to raise the right to

relief above the speculative level," and therefore they are insufficient to state a claim.[10]  *See Coleman*, 626 F.3d at 190.  Thus, Plaintiff's discrimination claims are all subject to dismissal under Rule 12(b)(6).  *See id.*; *See Linton*, 2011 WL 4549177, at *5.

<u>Retaliation (Count Three)</u>[11]

To state a claim for retaliation under Title VII, a plaintiff must allege sufficiently "(1) that he engaged in a protected activity; (2) that his employer took an adverse employment action against him; and (3) that a causal connection existed between the protected activity and the asserted adverse action."  *King v. Rumsfeld*, 328 F.3d 145, 150–51 (4th Cir. 2003); *see also Mason v. Montgomery Cnty.*, No. PWG-13-1077, 2015 WL 3891808, at *7 (D. Md. June 23, 2015).  Defendant argues that Battle's allegations of the second and third elements are conclusory and insufficient to state a claim.  *See* Def.'s Mem. 33.[12]

---

[10] Although Defendants only address the sufficiency of Battle's discrimination claims based on non-selection, the delay in reporting the ergonomic study, and the mischaracterization of his leave time, and do not address his claims that he was the victim of discrimination because he would not agree to take actions that he considered to be "illegal," "a district court may *sua sponte* dismiss a complaint for failure to state a claim." *Eriline Co. S.A. v. Johnson*, 440 F.3d 648, 655 n. 10 (4th Cir. 2006).  Moreover, "[w]here the face of a complaint plainly fails to state a claim for relief, a district court *has 'no discretion' but to dismiss it.*" *Id.* (quoting 5A Charles Alan Wright & Arthur R. Miller, *Federal Practice and Procedure* § 1357 (2d ed. 1990)) (emphasis added); *see Parker v. Am. Brokers Conduit*, No. JKB-15-3652, --- F. Supp. 3d ----, 2016 WL 1242625, at *8 (D. Md. Mar. 29, 2016) (same); *Nix v. NASA Fed. Credit Union*, No. PJM 15-2317, --- F. Supp. 3d ----, 2016 WL 4077720, at *5 (D. Md. Aug. 1, 2016) (same); *Awah v. Transunion*, No. ELH-15-02042, 2016 WL 3257795, at *11 (D. Md. June 13, 2016) (same).

[11] Although Plaintiff labels Count Three as "Retaliation and Harassment for Engaging in Protected Activities," Pl.'s Opp'n 14, he only alleges in Count Three that the Agency's "conduct . . . constitutes retaliation and reprisal against the Plaintiff" and that the Agency "retaliated and reprised against Plaintiff."

[12] Ultimately, to prevail on this claim, Battle must show that the decision makers for the adverse employment actions had knowledge of Battle's protected activity. *See Wright v. Sw. Airlines*, 319 F. App'x 232, 234 (4th Cir. 2009) (quoting *Dowe v. Total Action Against Poverty in Roanoke Valley*, 145 F.3d 653, 657 (4th Cir. 1998)) ("Since, by definition, an employer cannot take action because of a factor of which it is unaware, the employer's knowledge that the plaintiff engaged in a protected activity is absolutely necessary to establish the third element of

To allege the second element, an adverse employment action, Battle must identify an action "that a *reasonable employee* would have found . . . materially adverse," thereby "dissuad[ing] a *reasonable worker* from making [a complaint] of discrimination." *Burlington N.*, 548 U.S. at 68 (emphasis added) (citations omitted). "[C]ontext matters" in retaliation cases, as "retaliation may come in the form of a pattern [of] behavior, rather than a single [discrete] act," and therefore "a court may consider the cumulative effect of several allegedly retaliatory acts." *Smith v. Vilsack*, 832 F. Supp. 2d 573, 585–86 (D. Md. 2011) (explaining that "retaliation may come in the form of a pattern behavior, rather than a single act" and concluding that the plaintiff could "rely on the collective retaliatory force" of the alleged actions).

As for the third element, "[l]ittle is required to plead causation." *Autrey v. Maryland*, No. GLR-14-3064, 2016 WL 362502, at *5 (D. Md. Jan. 29, 2016) (citing *Karpel v. Inova Health Sys. Servs.*, 134 F.3d 1222, 1229 (4th Cir. 1998)). A causal relationship "exists where the employer takes adverse employment action against an employee shortly after learning of the protected activity." *Johnson v. United Parcel Serv., Inc.*, No. RDB-14-4003, 2016 WL 4240072, at *6 (D. Md. Aug. 11, 2016) (quoting *Price v. Thompson*, 380 F.3d 209, 213 (4th Cir. 2004)).

> In evaluating causation at the prima facie stage of the retaliation analysis, courts often consider: (1) whether the allegedly retaliatory actor was aware that the plaintiff had engaged in the protected activity at the time of the allegedly retaliatory act, and (2) the temporal proximity between the protected activity and the allegedly retaliatory act. *Baqir v. Principi*, 434 F.3d 733, 748 (4th Cir. 2006) (holding that a plaintiff had not established a prima facie case of retaliation where he had not shown that the allegedly retaliatory actors were aware of his protected activity); *Dowe v. Total Action Against Poverty in Roanoke Valley*, 145 F.3d 653, 657 (4th Cir. 1998) (determining that a lengthy period of time between the

---

the prima facie case."). Although Battle only alleges that "upper management" had knowledge of his EEO counseling, the frequency and duration of his EEO contact are significant enough that it is plausible that the actual decision makers knew about it, which "raise[s] [Battle's] right to relief above the speculative level." *See Coleman v. Md. Court of Appeals*, 626 F.3d 187, 190 (4th Cir. 2010); *Ashcroft v. Iqbal*, 556 U.S. 662, 678–79 (2009). Whether discovery will bear this out remains to be seen.

employer becoming aware of the protected activity and the alleged adverse employment action negated any inference that a causal connection existed).

*Lewis v. Balt. City Bd. of Sch. Comm'rs*, No. CCB-14-3363, 2016 WL 2939695, at *5 (D. Md. May 20, 2016).  "Ordinarily, temporal proximity between the protected activity and the adverse action is sufficient to suggest causality." *Autrey*, 2016 WL 362502, at *5 (citing *Constantine v. Rectors & Visitors of George Mason Univ.*, 411 F.3d 474, 501 (4th Cir. 2005)).

But a plaintiff need not rely on temporal proximity alone to plead causation; "intervening events may demonstrate plausible retaliatory animus."  *Bowman v. Balt. City Bd. of Sch. Comm'rs*, No. RDB-15-01282, 2016 WL 1159259, at *6 (D. Md. Mar. 24, 2016).  In *Bowman*, "[a]pproximately three months passed between [the teacher/employee's] direct complaint to [the principal] alleging discriminatory treatment on October 13, 2014 and the placing of [the teacher] on administrative leave in January 2015."  *Id.*  This Court observed that, during those three months, "Bowman claims that she was relieved of Team Leader duties, other teachers were no longer sent to observe her room, and she allegedly received negative comments about her job performance."  Reasoning that "[e]ach adverse action was plausibly in retaliation for her October 13th complaint," the Court concluded that the plaintiff had "alleged facts sufficient to show a causal link between her protected activity and the Board's adverse employment action."  *Id.*

Battle engaged in protected activity when he first sought EEO counseling on June 13, 2011, when he filed his first EEO complaint on August 10, 2011, when he amended it in September and October 2011, when he again sought EEO counseling on February 3, 2013, and when he filed his second EEO complaint on March 3, 2013.  Second Am. Compl. ¶¶ 12, 27, 29. As for the employer's actions, Battle's retaliation claim relies on the Agency's "conduct as alleged" in the Second Amended Complaint "as well as the information in Plaintiff's original

complaint."[13]   *Id.* ¶¶ 43–44.   Non-selection, such as when Battle was not hired as Supervisor of

Contracting, *id.* ¶ 13, certainly could have dissuaded a reasonable employee from taking EEO

action.   *See Burlington N.*, 548 U.S. at 68.   And, Wheeland's decision not to hire Battle followed

Battle's EEO counseling by as little as one and a half months, and may have followed Battle's

August 10, 2011 EEO complaint by a matter of days or a couple weeks.   Directives to take illegal

actions, "screaming and yelling," and a physical assault by a supervisor, Second Am. Compl.

¶ 14, also could dissuade a reasonable employee from taking EEO action.   *See Burlington N.*,

548 U.S. at 68.   These actions either closely followed Battle's continued EEO action of

amending his complaint in September and October 2011, or preceded the amendments but

closely followed the original complaint, as they occurred in "Fall 2011."

The issuance of a Letter of Reprimand, along with which he was "charged AWOL for 2

hours with no valid explanation" in March 2013, Second Am. Compl. ¶ 19; his supervisor's

creation of "a false and deceptive report that was forwarded to the Office of Medical Services

regarding his request for a reasonable medical accommodation" in April 2013, *id.* ¶ 20; and his

supervisor "down rat[ing] his final 2012 Performance Evaluation to unsatisfactory, and plac[ing]

him on a performance improvement plan (PIP)" in April 2013, *id.* ¶ 21, closely followed his

---

[13] Other than the three acts discussed above (his 2010 performance evaluation, the termination of his employment, and the revocation of his telecommuting privilege), Battle exhausted his administrative remedies with regard to the Agency's alleged retaliatory acts by seeking EEO counseling and raising these grounds in his first two EEO complaints and their various amendments. His subsequent withdrawals of his third EEO complaint and his MSPB appeal did not doom these remaining retaliatory acts, because unlike his claims regarding revocation of his telecommunications privilege and termination of employment, which only were *related to* the claims actually made but never explicitly included in an EEO complaint that he did not withdraw, he actually alleged the other retaliatory acts in his earlier EEO complaints, as amended, and he saw those claims through to completion. *See Ford v. Master Sec. Co., LLC*, No. PWG-15-2220, 2016 WL 1752897, at *4 (D. Md. May 3, 2016) (concluding that the plaintiff had exhausted her administrative remedies with regard to claims in a 2014 EEOC charge, despite the fact that the same claims were raised but not yet exhausted in a 2015 EEOC charge).

February 3, 2013 EEO counseling and/or his March 3, 2013 EEO complaint.  In contrast, the revocation of his "official duties as a Lead Team Specialist" in January 2012, Second Am. Compl. ¶ 21; the temporary mischaracterization of his FMLA leave in December 2012, *id.* ¶ 16; Pl.'s Opp'n 10 n.5; the delayed reporting of the ergonomic study in January 2013, Second Am. Compl. ¶ 17; and his lowered performance rating in January 2013, *id.* ¶ 18, did not occur until at least two months and perhaps as long as fourteen months later.  Likewise, the "hostile and threatening" email he received from the Director of Contracting in July 2013, *id.* ¶ 22; the "shocking and demeaning things" that his female supervisor said in his PIP meetings, including "'Blow me!'" in July 2013, *id.* ¶ 23; and his placement on administrative leave in August 2013, *id.* ¶ 24, followed his most-recent prior protected activity on March 3, 2013 by four months or more.  And, Battle does not allege when in 2013 he was denied a pay increase.  *Id.* ¶ 26. Additionally, some of these activities, on their own, are not adverse employment actions.  *See Coates v. Vilsack*, No. PWG-12-1787, 2015 WL 1013402, at *6 (D. Md. Mar. 6, 2015) ("[N]either the letter of reprimand nor the letter of proposed suspension is an adverse employment action on its own."); *Muldrow v. Blank,* No. PWG-13-1200, 2014 WL 938475, at *10 (D. Md. Mar. 10, 2014) (noting that neither "'a formal letter of reprimand,' or 'a proposed termination'" qualifies as "an adverse employment action in a retaliation claim" (quoting *Rock v. McHugh,* 819 F. Supp. 2d 456, 470–71 (D. Md. 2011))).

But, as noted, I must consider the whole picture, *see Smith*, 832 F. Supp. 2d at 585–86, in which Battle took EEO action repeatedly and experienced repeated employment actions that either were adverse in and of themselves or cumulatively would have dissuaded an employee from taking further EEO action.  Many of the employer's actions occurred within one or two months after Battle's contact with the EEO office, such that a sufficient causal connection is

alleged for these actions. *See Constantine*, 411 F.3d at 501; *Price*, 380 F.3d at 213; *Johnson*, 2016 WL 4240072, at *6; *Autrey*, 2016 WL 362502, at *5. I am satisfied that, under the circumstances, Battle sufficiently has alleged that the Agency took adverse employment actions that were causally connected to the protected activity in which he engaged. *See Smith*, 832 F. Supp. 2d at 585–86; *Bowman*, 2016 WL 1159259, at *6.

The Agency relies on *Anusie–Howard v. Todd*, 983 F. Supp. 2d 645, 650 (D. Md. 2013), in which this Court held that "[a]dding a conclusory statement, that the defendants took action 'in retaliation' for her protected activity, [was] insufficient to allege the required causal connection," where the alleged retaliatory action "occurred many months after" the plaintiff engaged in protected activity. These facts from *Anusie–Howard* are readily distinguished, however, because here many of the alleged retaliatory actions closely followed Battle's protected activity, such that Battle's assertion that the Agency acted "in retaliation" is not all that Battle offers to allege the causal connection; there also is temporal proximity. Indeed, in *Anusie–Howard*, the Court concluded that the plaintiff "ha[d] stated a *prima facie* claim of retaliation with respect to [her] allegation" that "'[t]he same month that [she] applied for FMLA benefits,' the defendants 'continued to assign [her] a full-time work schedule,' despite her newly part-time status," reasoning that it could "infer a causal connection between her protected activity and the adverse action, because the heavy workload assignment began 'shortly after' Anusie–Howard filed for FMLA benefits—in the same month." *Id.* at 650–51.

*Streeter v. Maryland National Capital Park and Planning Commission*, No. RWT-12-976, 2013 WL 105892 (D. Md. Jan. 8, 2013), and *German v. Akal Security, Inc.*, No. CCB-11-1242, 2011 WL 5974619, at *6 (D. Md. Nov. 29, 2011), on which the Agency also relies for its assertion that Battle's non-selection claim "amounts to nothing more than 'naked assertions of

wrongdoing,'" are inapposite.  In *Streeter*, the plaintiff "allege[d] that 'during her employment with [the Commission], she was subjected to sexual harassment from one of her supervisors . . .' and that the Commission 'failed to take corrective action'" and "retaliated against her for making . . . a complaint [about the harassment], and that Defendant Emily Rose placed unspecified requirements on Ms. Streeter's 'continued employment . . . ,'" and ultimately her employment was terminated.  2013 WL 105892, at *1.  The Court concluded that the plaintiff's "bare assertion[s]" and "naked allegations of generalized retaliatory conduct" were not sufficient to state a claim.  *Id.* at *2.  In *German*, this Court similarly concluded that a retaliation claim was subject to dismissal because there was "only [one] protected activity in the complaint with an identifiable date" and "only [one] subsequent adverse employer action cited with sufficient specificity," and the Court reasoned that the "four-month gap [between the events] may be too long to provide a causal link between the two actions."  2011 WL 5974619, at *6.  The Court also observed that the plaintiff's allegation that "her earlier demotion was 'a result of Plaintiff complaining of Defendants' discriminatory and retaliatory conduct,' . . . lack[ed] sufficient information to infer causality through temporal proximity."  *Id.*  But here, Battle identifies various specific instances of allegedly retaliatory actions in specific months, not "generalized retaliatory conduct" on unspecified temporally-distant dates.  *See Streeter*, 2013 WL 105892, at *2; *German*, 2011 WL 5974619, at *6.  Battle's claim for retaliation, to the extent that he exhausted his administrative remedies, is not subject to dismissal.  *See Constantine*, 411 F.3d at 501; *Price*, 380 F.3d at 213; *Smith*, 832 F. Supp. 2d at 585–86.

<u>Hostile Work Environment (Count Four)</u>

To state a claim for hostile work environment based on race or gender, Plaintiff must allege that he was subjected to "offending conduct" that (1) "was unwelcome," (2) "was because

of" his race or gender, (3) "was sufficiently severe or pervasive to alter the conditions of h[is] employment and create an abusive working environment," and (4) "was imputable to h[is] employer." *Westmoreland v. Prince George's Cnty., Md.,* 876 F. Supp. 2d 594, 614 (D. Md. 2012) (quoting *Hoyle v. Freightliner, LLC,* 650 F.3d 321, 331 (4th Cir. 2011)); *see also EEOC v. Xerxes Corp.,* 639 F.3d 658, 668–69 (4th Cir. 2011); *Banhi v. Papa John's USA, Inc.,* No. RWT-12-665, 2013 WL 3788573, at *8 (D. Md. July 18, 2013). The Agency contends that "there is nothing, beyond Plaintiff's speculation, to suggest that any of the allegedly hostile work incidents were driven by racial or gender animus," and "Plaintiff's personal belief that the . . . incidents were motivated by race or gender is not enough to withstand dismissal." Def.'s Mem. 36. The Agency also argues that this claim fails because Battle "cannot demonstrate that the conduct was sufficiently severe or pervasive to alter the conditions of h[is] employment." *Id.* at 37. Battle does not rebut these arguments. *See* Pl.'s Opp'n.

*Ruffin v. Lockheed Martin Corp.*, 126 F. Supp. 3d 521 (D. Md. 2015), is informative. There, the plaintiff "allege[d] that she had been 'targeted, harassed, and stalked,' '[h]er car was "keyed,"' her work had been 'sabotage[d],' 'erroneous complaints' and 'disparaging remarks' had been made against her, and she had not been given a pay raise." *Id.* at 530. But her "complaint [was] devoid of factual allegations that the hostile work environment was *because of* her race (or membership in any other protected class)." *Id.* On that basis, this Court concluded that her "race-based hostile work environment claim . . . fail[ed]." *Id.* (citing *Alexander v. U.S. Dep't of Veterans Affairs*, No. DKC 10–3168, 2012 WL 78874, at *5 (D. Md. Jan. 10, 2012), and noting that there, this Court stated that "without evidence of racial epithets, hostile work environment claim will likely fail," as "'mere speculation as to racial . . . animus will not suffice to prove that [plaintiff] suffered unwelcome conduct due to race'").

Similar to his other claims, Battle's hostile work environment claim references all of the conduct discussed in the Second Amended Complaint, "as well as the information in Plaintiff's original complaint." Second Am. Compl. ¶ 48. But, despite the number of acts that Battle claims were discriminatory, retaliatory, and hostile, his Second Amended Complaint, like Ruffin's pleading, was "devoid of factual allegations that the hostile work environment was *because of* [h[is] race (or [gender])." *See Ruffin*, 126 F. Supp. 3d at 530. His conclusory allegation that "Plaintiff was subject to discrimination in the terms and conditions of his employment and ultimately terminated because of his race and gender" does not suffice. *See id.* Therefore, he fails to state a claim for hostile work environment.[14] *See id.*; *Westmoreland*, 876 F. Supp. 2d at 614.

### "Discrimination based on disability" (Count Five)

Plaintiff alleges:

> Defendants[] did not make any accommodation for Plaintiff's situation, despite the fact that it was a result of and worsened by Defendants' behavior. Instead, Defendants[] engaged in retaliatory conduct, withdrew Plaintiff's telecommute schedule, failed to properly report the results of his ergonomic study, and either improperly categorized Plaintiff's leave requests or charged him with being

---

[14] The Agency's argument that this claim fails because Battle "cannot demonstrate that the conduct was sufficiently severe or pervasive to alter the conditions of h[is] employment," Def.'s Mem. 37, is less persuasive. Certainly, "isolated incidents (unless extremely serious) will not amount to discriminatory changes in the 'terms and conditions of employment.'" *Faragher v. City of Boca Raton,* 524 U.S. 775, 788 (1998) (citations omitted). The Fourth Circuit has made clear, however, that one incident may give rise to a hostile work environment. In *Boyer-Liberto v. Fontainebleau Corp.*, 786 F.3d 264, 280 (4th Cir. 2015), the Fourth Circuit concluded that "a reasonable jury could find that . . . two uses of [a racially derogatory] epithet—whether viewed as a single incident or as a pair of discrete instances of harassment—were severe enough to engender a hostile work environment" because "the harassment, though perhaps 'isolated,' c[ould] properly be deemed to be 'extremely serious.'" *Id.* at 280–81 (citing *Faragher,* 524 U.S. at 788). Here, Battle describes an incident in which his supervisor screamed, yelled, and swung a thick file folder at him, almost hitting him. Second Am. Compl. ¶ 14. This "extremely serious" solitary incident could be "severe enough to engender a hostile work environment" if Battle had otherwise properly pleaded the elements of a hostile workplace claim. *See Faragher,* 524 U.S. at 788; *Boyer-Liberto,* 786 F.3d at 280–81.

> AWOL for leave taken in connection with his disability. Moreover, placed Plaintiff on Administrative leave for almost a year, and subsequently terminated Plaintiff.
>
> . . . Defendants' conduct constituted discrimination against him based on his physical disability, Plaintiff has been injured and suffered damages, including but not limited to, emotional harm suffered to include anxiety, depression, and panic attacks and his physical condition worsening due the actions of the Defendants

Second Am. Compl. ¶¶ 53–54.   As best I can discern this, is a failure-to-accommodate case under either the Americans with Disabilities Act ("ADA"), 42 U.S.C. § 12131, *et seq*., or the Rehabilitation Act, 29 U.S.C. § 794(a).

> [T]he ADA . . . prohibits qualified individuals with disabilities from being excluded from participation in or being denied the benefits of the services, programs, or activities of a public entity. To make out a *prima facie* case under the ADA, Plaintiff must show that: (1) he is a person with a disability as defined by statute; (2) he is otherwise qualified for the benefit in question; and (3) "he was excluded from the employment or benefit due to discrimination solely on the basis of the disability."
>
>     To establish a violation of the [Rehabilitation Act], Plaintiff must show he: (1) is a qualified individual with a disability; (2) was denied the benefits of a program or activity of a public entity which receives federal funds; and (3) was excluded from the program or activity due to discrimination based solely on his disability.

*Young v. Barthlow*, No. RWT-07-662, 2007 WL 5253983, at *1–2 (D. Md. Nov. 7, 2007), *aff'd*, 267 F. App'x 250 (4th Cir. 2008) (quoting *Doe v. Univ. of Md. Med. Sys.,* 50 F.3d 1261, 1265 (4th Cir. 1995)) (other citations omitted).   Significantly, both statutes "require that Plaintiff show wrongful discrimination based upon his disability."   *Id.* at *2.   Based on the Second Amended Complaint, I can only speculate as to what disability Battle had, because he does not allege that he had a qualified disability or what that disability was.   Consequently, he fails to state a claim under either the ADA or the Rehabilitation Act.   *See Doe*, 50 F.3d at 1265; *Young*, 2007 WL 5253983, at *2.

**Summary Judgment**

The Agency styles its motion as one to dismiss or, in the alternative, for summary judgment.  Def.'s Mot. 1.  Generally, the Court may treat a motion to dismiss as a motion for summary judgment pursuant to Rule 12(d), if it gives "[a]ll parties . . . a reasonable opportunity to present all the material that is pertinent to the motion."  Fed. R. Civ. P. 12(d); *see Syncrude Canada Ltd. v. Highland Consulting Grp., Inc.*, No. RDB-12-318, 2013 WL 139194, at *2 (D. Md. Jan. 10, 2013).  But, if the party opposing a summary judgment motion "shows by affidavit or declaration that, for specified reasons, it cannot present facts essential to justify its opposition, the court may . . .  defer considering the motion or deny it."  Fed. R. Civ. P. 56(d).  Here, Battle submits the Declaration of his counsel, Wanda J. Dixon, who states that "[w]hile there is an administrative record which was developed as a result of EEOC investigations regarding the Plaintiff's claims, no discovery has been completed in this District Court case," and "[w]ithout an opportunity for discovery, Plaintiff is forced to rely on investigations prepared for use in EEOC proceedings, without having an opportunity to develop the content of the statements, or to probe the memory or veracity of the witnesses who made the statements." Dixon Decl. 1–2, ECF No. 47-1.

The Agency counters that an affidavit from counsel is unacceptable, apparently viewing it as a substantive affidavit regarding the merits of the case.  Def.'s Reply 2 & n.1 (citing *Evans v. Techs. Applications & Serv. Co.*, 80 F.3d 954, 962 (4th Cir. 1996), for the proposition that an "affidavit in opposition to a motion for summary judgment must 'contain admissible evidence and be based on personal knowledge'" and *In re Boardwalk Dev. Co*., 72 B.R. 152, 155 (Bankr. E.D. N.C. 1987), in which the court stated that, "[b]ecause it is unlikely that counsel representing the debtor would be permitted to appear as a witness in the proceeding, this court has doubts as

to the propriety of the debtor's attorney giving an affidavit in support of the debtor's summary judgment motion"). To the contrary, the Court routinely accepts such affidavits for purposes of Rule 56(d). *See, e.g.*, *Rullan v. Goden*, 134 F. Supp. 3d 926, 951 (D. Md. 2015) ("Rullan's counsel has filed an affidavit pursuant to Federal Rule of Civil Procedure 56(d) pointing to relevant information that Goden's deposition could provide. The court will not grant summary judgment to Goden on her fraud claim at this time."); *Westmoreland v. Prince George's Cnty.*, No. TDC-14-0821, 2015 WL 996752, at *7–8 (D. Md. Mar. 4, 2015) (not treating motion as one for summary judgment where it was "not clear what if any discovery was conducted as part of the EEOC process" and where plaintiff's counsel submitted a Rule 56(d) affidavit "describ[ing] the discovery she believe[d] would be necessary for an adequate response to the County's Motion for Summary Judgment").

As for whether discovery is necessary, *Hart v. Lew*, 973 F. Supp. 2d 561 (D. Md. 2013), is informative. In that Title VII sex discrimination and retaliation case, the plaintiff stated in her Rule 56(d) affidavit that, "in order to respond to defendant's motion for summary judgment, she 'require[d] the opportunity to depose Defendant and others who have information relevant to the claims of this lawsuit.'" *Id.* at 573. The defendant countered that "the extensive [EEO] administrative record provides plaintiff with all of the information necessary for her to respond to the motion for summary judgment." *Id.* This Court disagreed, observing that although "the administrative record contains voluminous documentation of plaintiff's claims of discrimination, the steps the Department took to address Hart's claims, the resolution of Hart's claims at the agency level, and affidavits from those Hart accuses of misconduct[,] [n]one of the administrative proceedings took place in an adversarial context." *Id.* The Court "conclude[d] that it would be premature to consider a motion for summary judgment before plaintiff has had

an opportunity to engage in discovery," reasoning that in Title VII cases, "credibility is often in issue, and cannot be decided by a judge on summary judgment," and "without depositions, at which plaintiff can cross-examine those she accuses of sex discrimination and retaliation, plaintiff has no means of ferreting out inconsistencies or falsehoods in the statements of her alleged harassers."  *Id.* at 573–74; *cf. Khoury v. Meserve*, 268 F. Supp. 2d 600, 612 (D. Md. 2003) (finding former Rule 56(f) (now Rule 56(d)) affidavit insufficient where it "stat[ed] that discovery ha[d] not yet been undertaken in th[e] case and that summary judgment therefore would be premature" because "[t]he *MSPB* record include[d] affidavits of the relevant agency officials and witnesses, many of whom also testified under oath at the MSPB hearing" and "a full and detailed factual record was created through *an adversarial process* before the MSPB," such that "Plaintiff [could] not claim that there ha[d] not been time or opportunity to develop the facts of th[e] case" (emphases added)), *aff'd*, 85 F. App'x 960 (4th Cir. 2004).   As in *Hart*, the non-adversarial administrative record does not provide a sufficient basis for a summary judgment ruling.  *See Hart*, 973 F. Supp. 2d at 573–74.  Therefore, I will deny the Agency's motion, to the extent that it is a motion for summary judgment, without prejudice to renewal following discovery.  *See* Fed. R. Civ. P. 56(d).  In so doing, however, Plaintiff is cautioned that the scope of discovery that will be permitted by Fed. R. Civ. P. 26(b)(1) has been significantly narrowed by the dismissal of all of Plaintiff's claims except his retaliation claims that are unrelated to his termination.  Accordingly, the discovery must be limited to facts relevant to those claims and any defenses that Defendant may plead in its answer.

## **ORDER**

Accordingly, it is, this <u>19th</u> day of <u>September</u>, <u>2016</u> hereby ORDERED that

1. The Agency's Motion to Dismiss or, in the Alternative, for Summary Judgment, ECF

No. 42, IS GRANTED IN PART AND DENIED IN PART AS FOLLOWS:

    a.  The Agency's Motion to Dismiss Counts One, Two, Four, and Five IS

       GRANTED;

    b.  The Agency's Motion to Dismiss Count Three (Retaliation) IS GRANTED to the

       extent that the claim is based on Battle's termination, and otherwise IS DENIED;

       and

    c.  The Agency's Motion for Summary Judgment IS DENIED WITHOUT

       PREJUDICE; and

2. The Agency WILL FILE an answer to the remaining retaliation claims (other than

those related to his termination) in Count Three on or before October 3, 2016.

                                          _____/S/_____

                                          Paul W. Grimm

                                          United States District Judge